IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHELSIE POLZINE,** | § § § | |
| Plaintiff | § § | CIVIL ACTION NO. 4:18-cv-03198 |
| vs. | § § | Diversity of Citizenship / Jury Demanded |
| **KEVIN ELLIS,** | § § § | |
| Defendant | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff, Chelsie Polzine ("Ms. Polzine"), by and through her attorneys of record, who complains of Defendant, Kevin Ellis ("Mr. Ellis"), and respectfully shows as follows:

### I. THE PARTIES

1. Ms. Polzine was a resident of Thornton, Colorado at all times material to this cause.

2. Mr. Ellis is an individual who resided in Texas all times material to this cause.

*Mr. Ellis has appeared and answered herein. No service is required at this time.*

### II. JURISDICTION & VENUE

3. The jurisdiction of this Court has been invoked pursuant to 28 U.S.C. §1332(a)(1), because the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4. Venue is proper in the Houston Division of the United States District Court for the Southern District of Texas because all or part of the acts and omissions giving rise to the incident in question occurred in Houston, Texas.

### III. GENERAL LEGATIONS / OPERATIVE FACTS



1

5. At all times pertinent to the allegations set forth in this Complaint, Ms. Polzine was employed as an accountant by DCP Midstream ("DCP").

6. As part of her employment with DCP as an accountant, Ms. Polzine was required to attend and participate in a three-month long job training occurring in Houston, Texas.

7. As part of these business-related trainings, Ms. Polzine traveled from Colorado to Houston and was a registered guest at the JW Marriott hotel located at 5150 Westheimer Road, Houston, Texas 77056.

8. During the afternoon of August 23, 2016, while staying as a guest at the Marriott, Ms. Polzine returned to the Marriott after being transported by a shuttle from 5178 Westheimer Road, Suite 1900, Houston, Texas, at the conclusion of her training session.

9. Ms. Polzine decided to have a drink and dinner at Sage 400, a restaurant near the Marriott located at 2800 Sage Road, Houston, Texas.

10. Ms. Polzine traveled to Sage 400 from the Marriott via the Marriott hotel shuttle. She was alone and unaccompanied by any friends, fellow co-workers or family. Video recordings of the events that transpired that evening at Sage 400 have been secured from Sage 400.

11. At approximately 5:47 p.m.,[1] Ms. Polzine entered Sage 400 and took a seat by herself at the bar, away from others, and in front of the bar television.

12. At approximately 5:50 p.m., Ms. Polzine ordered a drink (i.e., a glass containing approximately 2 ounces of "Jameson") at the bar. She intermittently watched television and looked at her phone while enjoying her drink.

---

[1] The times recited herein are approximate and based upon the time-stamps in the video footage.

13. At approximately 5:55 p.m., Mr. Ellis and a business associate, Barry Esene, entered Sage 400 and they sat down at the bar some distance away from Ms. Polzine, to the left of and behind her. Prior to this time, Ms. Polzine had never met or known either man.

14. At approximately 6:10 p.m., Ms. Polzine ordered her dinner and was in due course brought sushi rolls. She ate dinner and, again, was otherwise occupied by the television and her phone.

15. At no time did Ms. Polzine attempt to engage Messrs. Ellis or Esene, or anyone at the bar.

16. At approximately 6:38 p.m., the bartender "topped off" the Jameson of Ms. Polzine at the direction of Mr. Esene and/or Mr. Ellis, after which time the bartender waved her over towards Mr. Esene and Mr. Ellis.

17. Beginning at approximately 6:39 p.m., at the bartender's encouragement[2] and per the direction of Mr. Esene, Ms. Polzine began to visit socially with Mr. Esene and Mr. Ellis, both of whom were not previously known to her.

18. They discussed social and business matters, especially after Mr. Esene expressed genuine interest in the fact that Ms. Polzine was an accountant with specific experience in the type of accounting utilized in his landfill business.

19. At approximately 8:52 p.m., Ms. Polzine left Sage 400 with Mr. Esene and Mr. Ellis. At or about that point in time, Ms. Polzine "blacked out." Ms. Polzine remembers nothing thereafter of the events that transpired as set forth herein until awaking in her room 933 at the Marriott, naked from the waist down.

---

[2] Actually, when Ms. Polzine initially declined to go over to where Messrs. Ellis and Esene were sitting at the other end of the bar, the bartender actually hijacked Ms. Polzine's drink and carried it over to where the gentlemen were sitting.

3

20. Mr. Esene and Mr. Ellis departed Sage 400 and took Ms. Polzine to the Men's Club Houston, situated at 3303 Sage Road, Houston, Texas. Men's Club Houston is a topless "gentlemen's club."

21. Ms. Polzine remembers nothing of the period of time after being taken from Sage 400 by Mr. Ellis and Mr. Esene, traveling to the Men's Club Houston, the events occurring at the Men's Club Houston, her travel from the Men's Club Houston back to the Marriott, or her being sexually assaulted in her room 933 at the Marriott.

22. Apparently, Ms. Polzine became so intoxicated that she became ill at the Men's Club. Houston, and management directed Messrs. Esene and Ellis to remove her from the premises.

23. Mr. Esene and Mr. Ellis departed the Men's Club Houston with Ms. Polzine. They arrived at the Marriott in two vehicles at approximately 10:14 p.m.[3] Ms. Polzine was in Mr. Ellis' truck.

24. The events occurring thereafter in the front of the Marriott and in the lobby and reception area were recorded by video created and maintained by the Marriott in the normal course of business. There are no video recordings of room 933 or the hallway immediately adjacent to Ms. Polzine's room.

25. At the time of her being returned back to the Marriott by Mr. Esene and Mr. Ellis, Ms. Polzine had vomited in Mr. Ellis' truck, she was entirely "blacked out," and she was unconscious to her surroundings.

26. At approximately 10:16 p.m., Mr. Esene approached the front desk and began speaking with Mason Gonzales, the Marriott front desk clerk. Shortly thereafter, Mr. Ellis

---

[3] The times recited herein are approximate and based upon the time-stamp of the Marriott video footage, which law enforcement reported to reflect between an 8-10-minute delay from real time.

4

approached the front desk of the Marriott with Ms. Polzine's wallet. Ms. Polzine was not present when this occurred as she was out in front of the hotel in the same vehicle which took her from the Men's Club Houston to the Marriott. All of the time she remained unconscious.

27.     At the front desk of the Marriott, Mr. Esene and Mr. Ellis sought to obtain Ms. Polzine's room key for the purpose of returning her to her room. After Mr. Ellis showed the front desk clerk some sort of identification taken from Ms. Polzine's wallet, Mr. Gonzales handed the key to Ms. Polzine's room (Room 933) to Mr. Ellis.

28.     After Mr. Esene and Mr. Ellis were seen securing the key for room 933 from the front desk of the Marriott, and while Mr. Gonzales was creating the key and handing it to Mr. Ellis, Mr. Esene obtained a wheelchair from Marriott personnel to take Ms. Polzine from Mr. Ellis' truck to her Marriott Room 933.

29.     At approximately 10:19 p.m., Mr. Esene and Mr. Ellis used a wheelchair to roll the visibly unconscious and sick Ms. Polzine into the Marriott.[4] Mr. Esene and Mr. Ellis took approximately three minutes to move Ms. Polzine into the wheelchair from the vehicle that took her from the Men's Club Houston to the Marriott.

30.     Mr. Esene and Mr. Ellis then pushed Ms. Polzine in the wheelchair from a vehicle in the valet area immediately in front of the Marriott into the front entrance of the Marriott, through the lobby, down a hall toward the elevators, and into an elevator.

31.     Between approximately 10:19 p.m. and 10:36 p.m., Ms. Polzine had been escorted by Mr. Esene and Mr. Ellis up to and into Room 933. The room key records reflect the two men spent approximately 10-12 minutes in Ms. Polzine's room.

---

[4] Ms. Polzine vomited in Mr. Ellis' truck en route to the hotel. Marriott video and witness testimony details efforts to secure towels to clean up the vomit on Ms. Polzine and/or in Mr. Ellis' truck.

32. When Messrs. Esene and Ellis left Ms. Polzine in her room, she was so incapacitated that Messrs. Esene and Ellis both agreed in their deposition testimony that she was unable to give consent to sex.

33. At approximately 10:36 p.m., Mr. Esene and Mr. Ellis can be seen returning through the hotel lobby.

34. Unbeknownst to Ms. Polzine or Mr. Esene, Mr. Ellis did not leave Ms. Polzine's room key in her room when they left Room 933. However, Mr. Esene left his business card and left a note asking Ms. Polzine to call him, because he continued to be interested in her accounting background and its possible use in his business.

35. After going downstairs, Mr. Esene and Mr. Ellis said goodbye to each other, returned to their respective vehicles, and departed the hotel parking lot.

36. Mr. Ellis did not return Ms. Polzine's room key to the front desk on his way out.

37. Mr. Esene did not return to the Marriott for the remainder of that evening.

38. However, just minutes after driving out of the parking lot, Mr. Ellis returned to the Marriott, parked his truck some distance away from the front drive of the hotel (instead of pulling up to the valet as he had before), tipped the bellman, and entered the front entrance of the Marriott. Mr. Ellis then passed through the hotel lobby, walked down the hallway, and got into a hotel elevator.

39. Mr. Ellis accessed Room 933 again, using the room key originally issued to him and which he failed to leave behind when he left the hotel minutes earlier. Ms. Ellis remained in Ms. Polzine's room for approximately half an hour.

40. During the time Mr. Ellis was in Room 933 this second time, he sexually assaulted the incapacitated Ms. Polzine.

6

41. At approximately 11:11 p.m., Mr. Ellis is seen exiting an elevator alone, walking across the hotel entryway, and departing the Marriott a second time.

42. Early in the morning of August 24, 2016, Ms. Polzine awoke alone in her bed in Room 933 at the Marriott. Ms. Polzine recalled nothing of the evening of August 23, 2016, or the early morning of August 24, 2016 (i.e., after socializing with Mr. Ellis and Mr. Esene at Sage 400 as set forth above). Upon awakening, Ms. Polzine was shocked that she had no clothing on beneath her waist. She observed blood on her sheets. However, she was feeling desperately ill, so she took a shower and returned to bed for more sleep.

43. Ms. Polzine does not recall anything occurring after being at Sage 400 as described above until waking up the next morning, alone in Room 933 at the Marriott. At the time, she had no idea how she had been returned to her room at the Marriott or who was responsible for returning her.

44. Ms. Polzine next recalls waking up a second time at what she believes to be between approximately 4:00 and 5:00 a.m. For the first time, Ms. Polzine noticed vomit was in her hair, on her body and various places disbursed upon her bed.[5] As she remained very ill, Ms. Polzine arose from her bed to go to the bathroom to take another shower, whereupon she again vomited in the bathroom. Ms. Polzine returned to her bed, this time taking a trash can with her to place beside her bed to catch her vomit.

45. At approximately 7:00 a.m., Ms. Polzine's alarm clock went off. She was still very physically ill and barely able to move. Ms. Polzine sent a text message to the individual who was attending training with her communicating that she was sick and would be unable to attend training that day.

---

[5] Marriott staff noticed vomit on the lower leg of Ms. Polzine's jeans and her on her person after they were asked to retrieve towels by Mr. Ellis and/or Mr. Esene upon their arrival at the hotel the previous evening.

46. Over the next several hours, Ms. Polzine remained extremely nauseated and took showers in the hope of feeling better and to remove vomit from her hair.

47. At some time that morning of August 24, 2016, Ms. Polzine began communicating by text with her boyfriend, Toby Gardner. Having learned of the state in which she found herself when she awoke, and her state of physical illness, her boyfriend pressed Ms. Polzine go to a local hospital for assessment and treatment.

48. Late in the morning of August 24, 2016, Ms. Polzine felt well enough to arrange with Uber to be taken to Sacred Heart – San Felipe – Emergency Center, 5018 A San Felipe, Houston, Texas 77056.

49. At the Sacred Heart Emergency Center ("Sacred Heart"), Ms. Polzine understood for the first time that she might have been sexually assaulted.

50. It was suggested to Ms. Polzine by unknown representatives of Sacred Heart that contact be made with the Houston Police Department ("HPD") to report that Ms. Polzine might have been sexually assaulted and that a sexual assault kit be administered.

51. As Sacred Heart did not have the ability to conduct a proper forensic sexual assault examination, Ms. Polzine, accompanied by a Detective Baltazar of the HPD, was transported to Ben Taub Hospital ("BTH").

52. Sometime during the late afternoon or early evening of August 24, 2016, after an multi-hour forensic sexual assault examination by a certified sexual assault nurse examiner ("SANE"), Ms. Polzine was informed that trauma observed in and on her person was highly likely the result of her having been sexually assaulted.

53. Ms. Polzine was sexually assaulted by Mr. Ellis.

## IV.
## FIRST CLAIM FOR RELIEF

*(Sexual Assault)*

54. Plaintiff incorporates by reference the allegations above as if repeated herein.

55. Mr. Ellis intentionally and knowingly caused the penetration of the anus, sexual organ, or mouth of Ms. Polzine by the sexual organ of the actor without the consent of Ms. Polzine.

56. As a result of such acts of Mr. Ellis, Ms. Polzine was caused damages, injury and/or loss.

57. Such acts of sexual invasion by Mr. Ellis were without the knowledge or consent of Ms. Polzine.

58. Mr. Ellis acted with a reasonable belief that Ms. Polzine would regard such contact as offensive and/or provocative.

59. Ms. Polzine has incurred injury, damages and loss as a result of the actions of Mr. Ellis. She further requests punitive damages be assessed against this Defendant as well, for his intentional violation of her person.

## V.
## DAMAGES

60. As a result of said occurrences, Ms. Polzine sustained severe injuries to her body and mind, which resulted in physical pain, suffering, mental anguish and impairment in the past and it is reasonably probable that she will continue to suffer such injuries and damages for a long time into the future, if not for the remainder of her life. On account of her injuries and damages, Ms. Polzine has been caused to seek and obtain medical and psychological treatment in the past and it is reasonably probable that she will continue to need such medical and psychological treatment for a long time into the future, if not for the remainder of her life. In addition, Ms. Polzine was gainfully employed at the time of the incident in question and, as a result of her injuries and damages (or the reasonable and necessary treatment thereof), her employment and earnings

have been impaired in the past and it is reasonably probable that her employment and earnings will be adversely affected in the future. Ms. Polzine seeks these and all other damages to which she is entitled under the law.

61. Ms. Polzine is also entitled to punitive damages because the aforementioned actions of Defendant were intentionally tortious, and Ms. Polzine's injuries were caused by Defendant's malicious, willful, or wanton conduct.

## VI.
## JURY DEMAND

PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY

JURY OF ALL ISSUES SO TRIABLE.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Polzine respectfully requests that this Court enter Judgment against Defendant; and that this Court, by way of illustration and not limitation, award to Ms. Polzine her economic damages, non-economic damages, consequential damages, emotional damages, and all other types and categories of damage recognized by law, including -- should such be deemed appropriate by this Court -- punitive or exemplary damages; her reasonable attorney's fees and costs; pre- and post-judgment interest; and such other and further relief to which Ms. Polzine may be entitled.

Respectfully submitted,

R. Blake Brunkenhoefer
State Bar of Texas No. 00783739

BRUNKENHOEFER, P.C.
500 N. Shoreline Blvd., Suite 1100
Corpus Christi, Texas 78401-0354
Phone: (361) 888-8808
Fax:	(361) 888-5855
bbrunk@brunklaw.com
**E-service address:** efile@brunklaw.com*
*\*E-service is only accepted at the above-designated e-service email address*

	and

Richard L. Eddington
State Bar of Texas No. 06407000
EDDINGTON LAW FIRM, L.L.C.
1665 Grant Street, 1st Floor
Denver, Colorado 80203
Phone: (303) 815-1585
Fax:	(720) 420-4515
rick@eddingtonlaw.com


s/ R. Blake Brunkenhoefer
R. Blake Brunkenhoefer

**CERTIFICATE OF SERVICE**

    I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure on this 19th day of April, 2021. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by certified mail, return receipt requested as necessary. Parties may access this filing through the Court's electronic filing system.

                                                                 s/R. Blake Brunkenhoefer
                                                                  R. Blake Brunkenhoefer